Dear Mr. McClelland:
You requested an Attorney General's opinion regarding the St. Mary Parish Communications District's ("District") E-911 center. You indicate that the District created the E-911 center in 1991 to give the people of St. Mary Parish one number to dial in case of emergencies. The District was created as a single button transfer center to all emergency entities. In 1995, the E-911 center began dispatching for eight of the eleven fire departments in St. Mary Parish.
The District is funded by surcharges from wireline and wireless telephones. These surcharges are used to pay telecommunicator and administrative positions, 911 telephone equipment purchase and maintenance, 911 addressing for the parish, and insurance, supplies, mileage, and related expenses. The District has attempted to obtain an intergovernmental agreement with the fire departments to include a fee to defray any future dispatching expenses.
Your questions are as follows:
 1. May the E-911 center continue to dispatch for the fire departments without compensation?
 2. May the District charge the fire departments for dispatching in the absence of an intergovernmental agreement?
With respect to your first question, La.R.S. 33:9105 provides that an emergency telephone system shall be designed to have the capability of utilizing at least one of the following four methods in response to emergency calls:
 (1) "Direct dispatch method", that is a telephone service to a centralized dispatch center providing for the dispatch of an appropriate emergency service unit upon receipt of a telephone request for such services and a decision as to the proper action to be taken. *Page 2 
 (2) "Relay method", that is a telephone service whereby pertinent information is noted by the recipient of a telephone request for emergency services, and is relayed to appropriate public safety agencies or other providers of emergency services for dispatch of an emergency service unit.
 (3) "Transfer method", that is a telephone service that receives telephone requests for emergency services and directly transfers such requests to an appropriate public safety agency or other provider of emergency services.
 (4) "Referral method", that is a telephone service that, upon the receipt of a telephone request for emergency services, provides the requesting party with the telephone number of the appropriate public safety agency or other provider of emergency services.
R.S. 33:9105(B) then states the governing authority of the district shall select the method which it determines to be the most feasible for the district. So in your case, the District appears to have discretion to choose which of the four approved methods is the most feasible. The District may choose the direct dispatch method and dispatch emergency calls for the fire departments, and it may do so without additional compensation. However, the District is not authorized to use its surcharge revenues to answer non-emergency telephone calls for other public entities and/or for call-taking and dispatching of non-emergency radio transmissions for other public entities.[1]
We note that the District is not required to dispatch for the fire departments. The District may choose one of the other three methods, which do not involve dispatching by the District. And to that end, it may refuse to provide E-911 services by as many as three of the four approved methods (meaning so long as it chooses one approved method, it can refuse to provide services by any or all of the other approved methods).[2]
In answer to your second question, the District does not have the authority to charge fire departments for dispatching in the absence of an intergovernmental agreement. Funding for communications districts is governed by La.R.S. 33:9106. Pursuant to R.S. 33:9106(B), the governing authority by a majority vote of the people of the district may levy an emergency telephone service charge. The District is required to use the proceeds of the service charge to fund the District, which means "to pay the expenses necessary to carry out all purposes of the district".[3]
This would include designing a *Page 3 
system with the capability of utilizing at least one of the following four response methods indicated above. It should also be noted that if the proceeds of the service charge exceed the amount of monies necessary to "fund the district", the district governing authority shall by ordinance reduce the service charge or may suspend it, and when necessary reestablish the service charge or lift the suspension.
As indicated, the District may choose a response method that does not involve dispatching by the District. It is our understanding that if the District chooses a method other than direct dispatch, some of the fire departments may want the District to continue dispatching for them. We note that 33:9106 authorizes the District to receive federal, state, parish, or municipal funds, as well as funds from private sources. As such, the District may receive funds from these fire departments.
Our office has previously opined that communications districts can enter into intergovernmental agreements to provide dispatch services.[4]
If the District chooses not to use the direct dispatch method, it may enter into intergovernmental agreements with individual fire departments to provide dispatching services for those departments. Additionally, the District may enter into intergovernmental agreements with fire departments under which the District's personnel could provide non-emergency dispatch services for the fire departments. Caution should be exercised so that the consideration to be received by the District from the fire departments adequately reimburses the District for the costs incurred in rendering the services set forth in the agreements.
Trusting this adequately responds to your request, we remain
 Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:__________________________
 KENNETH L. ROCHE, III Assistant Attorney General
 CCF, JR/KLR, lII/crt
[1] Attorney General Opinion No. 96-97-A.
[2] Attorney General Opinion No. 06-0250.
[3] R.S. 33:9106A(7).
[4] Attorney General Opinion Nos. 03-0289 and 96-97-A.